And I will now call the case of Lloyd Wickboldt v. Massachusetts Mutual Life Insurance Company. Good morning, Your Honors. I'm Erin O'Leary on behalf of Mr. Lloyd Wickboldt. This case involves a dispute over whether or not a lifetime rider extends the monthly disability insurance benefit and the COLA increases or cost of living increases beyond the expiration date of the initial policy for the rest of Mr. Wickboldt's life, or whether the lifetime rider extended only the monthly benefit for the rest of his life. The facts of this case are that in September of 1985, Mr. Wickboldt was working as a medical doctor who specialized in dermatology. And at that time, he decided to purchase from, which was known as Connecticut Mutual Life Insurance Company, a disability insurance policy along with some riders that attached to the policy. The relevant rider in this case is the cost of living rider or the COLA rider. There were some other riders that aren't really at issue, so they won't be discussed. Approximately six, seven months later, Mr. Wickboldt decided to add a lifetime benefit rider. So he applied to the company to add the rider, and that rider was added and became effective September of 2017. Fast forward to the year 2000, Mr. Wickboldt became totally disabled and then started claiming benefits under the policy. Once Mr. Wickboldt reached the anniversary of the policy after his 65th birthday, Mass Mutual, which had taken over on behalf of Connecticut Mutual, denied Mr. Wickboldt his COLA benefits, saying that they terminated on his policy anniversary after his 65th birthday. So the dispute is whether, again, whether those COLA benefits continued in addition with the lifetime benefits. Can you answer a question for me? I may have missed it in your brief, but how much money do you think he is due, and how do you get to that figure? How do you read the contracts to where you get to that figure? Well, we believe that he should, he gets, I believe it's $8,000 under the lifetime benefit policy, and that under the cost-of-living rider, he should receive an additional, I think it's $8,000 or $16,000. And we reached that because we believe the cost-of-living rider was extended by the lifetime benefit rider. And I think it's important to look at the actual language of the riders as to why we believe that. Counsel, can I, I just want to, I'm going to summarize what I think your argument is, and let me know if I'm right or not, because I'm, I was a little confused by some of the briefing here and how this all played out in the litigation. So as I understand your argument, the cost-of-living rider is incorporated into the underlying policy, as is the lifetime rider. And because it's incorporated, we then look to the termination section for the cost-of-living rider, and that termination section, it terminates on the earliest of, and the last of those bullet points is the date that your policy ends. And since it's incorporated, all of them are incorporated into the underlying policy, the lifetime policy extended it such that it has not terminated. Is that your argument? Exactly, Your Honor. You summed it up perfectly. All right, good. I appreciate that. So I just want to, now that we understand each other, let me ask a question. So I understand your argument on the cost-of-living rider with regard to the termination provision, but the provision right above that asks, how long will pay increases? And that says, will pay benefit increases, this is the cost-of-living rider increases, until the earliest of, and the last of those bullet points is the anniversary on or before your 65th birthday. So even for some reason, if the cost-of-living rider did not terminate, doesn't it also, doesn't it explicitly say that we're not going to pay anything past the, I think it's September 1st, 2017, which is the anniversary date after the 65th birthday? Well, it says we will not pay benefit increases, so the increases stop at, on that date. But he still is entitled to receive whatever he had accrued up to that point in time. Well, but the whole COLA is the benefit increases. In other words, what COLA says, in other words, the first sentence of the COLA is, this rider provides monthly benefit increases. If the increases stop, meaning all the increases that have been there on the 65th birthday, there's nothing left, right? There's no other increases. There's no increase, but the amount of money that he was receiving at that particular point in time is part of the total disability benefits that he was receiving. And through the lifetime rider, those total disability benefits would be extended. You don't, what about the plural increases? You don't take the fact that there's plural increases to mean all of the increases that have been accrued since the cost-of-living rider started in, which is in 2000 until it ended on the anniversary? It's all the increases, right? Everything. Right, the increases. In other words, it doesn't say we're not going to pay further increase after this date. It says the increases, all of them, plural, will stop until this date, right? That's what it says, yes. It says we stop increasing, but our position is. Well, it doesn't say increasing. That's a different word. I'm sorry, increases. You're right. And increases is the same word that is what the rider provides. So if the increases are gone after a certain date, then what is there left after September 1st of 2017? Well, at that point, he was receiving a specific dollar amount in his total monthly disability benefits. And under the lifetime rider, that amount gets extended. All right, so let's talk about the lifetime rider then. So I understand your position with regard to the cost-of-living portion. So on the lifetime rider, it defines the term monthly total disability benefit. So what you said is he gets this total that's accrued up until then. So there's a definition on there on what monthly total benefit is. And that says the largest amount of monthly benefit that you will receive under this rider is shown on the current cover page of your policy. And the cover page under the phrase maximum monthly benefit is it's $8,000, right? Just for the basic policy. It doesn't say basic policy. It just says – so it lists coverage. So I'm looking at the cover page. There's coverage. It lists basic, partial disability, lifetime, cost-of-living, own occupation. And then at the end of all of that, it says your maximum monthly benefit is $8,000, right? Right, but that cover page which was issued back when the lifetime rider was added really is somewhat inconsistent because it says that's the maximum, but it really wasn't at that point because at that time, he still had – Well, that makes – but it makes complete sense if we look to what the lifetime rider says, which is what you will get is going to be listed on the cover page. And that says $8,000, doesn't it? It does for the lifetime, but it also says it's payable to year 2016, which is – Again, I'm looking at your maximum monthly benefit is, and it's not listed to any particular year. It just says $8,000. I'm sorry. I'm trying to find it on the copy here because if you look above the provision that says lifetime accident sickness, it's got the $8,000. Yes. But then it also says payable to year 2016, which is inconsistent and impossible because it doesn't even kick in. Well, I'm not looking at that line, but even if I was looking at that line, I don't see how that's inconsistent with what it says in the monthly total disability benefit. Again, defining the term in the long-term policy, it says the largest amount of monthly benefit, not the year it's due, but the largest amount you will receive is shown on the current cover page. And that says if you look to the line on lifetime accident sickness, it's $8,000, right? That's what it says, but I think that that provision doesn't take into consideration the additional benefits that would be earned under the COLA because just the lifetime benefit, I mean, when they issue that, they don't know who has the COLA, who doesn't, so that's what the policy states. It doesn't take COLA specifically into consideration because it's just left somewhat generic. Doesn't that mean that the COLA isn't taken into consideration, I guess? Isn't that what the conclusion could be? Well, based for that one specific line item, right, but then when you add the COLA on top of it, the benefit goes up. So can I go back to Judge Brasher's question because I don't think I understood your answer. And Judge Brasher said, you know, what benefit are you seeking to receive? And I thought you said either $16,000 or $24,000. Is that what you said? No. Honestly, I don't know the exact number right now. I believe it was an additional $16,000 a month. I didn't really focus on the numbers so much. But basically what he wants is the amount of COLA that he was earning at the time of the September 1, 2017, whatever that amount was, which I believe was $16,000 because I believe under one of the provisions he was allowed to recover. Let me find it here if you bear with me a moment. I think it was like twice the amount of benefits. So the COLA is based on the basic monthly benefit as I understand it. Is that what you understand? Yes. Okay. And then it reaches the maximum amount which he had reached. Which was $16,000. I think it was $16,000. Okay. And so today you're arguing on top of that he gets another $8,000 for the lifetime? Well, he has his lifetime benefit, which he's been getting, which they've been paying to him, and that he should on top of that be getting the COLA benefit because the lifetime benefit continued the COLA benefit. Instead, they cut it off. They stopped paying that part. No, no, no. I know. So my understanding is he's getting $8,000 a month now. And you're saying he's entitled to three times that or two times that? Two times that, $16,000. Okay. Thank you. Can I go back to what Judge Luck was asking you about, which was the COLA rider and the termination clause? So the termination clause says this rider will end on the earliest of the following dates. And one of those dates is the anniversary on or after your 65th birthday, right? So the termination clause under the COLA rider, it seems, if you look at the rider, it's terminated at 65. That's what that says. But it also says the date the policy ends. And if you look at the license. I mean, it says the earliest, right? Right. It does say that. But I'd like to point out that the lifetime rider, which the first provision of it states, this rider provides monthly total disability benefits to be paid beyond the anniversary on or after your 65th birthday. Benefits will be paid for life. But then if you go down to the termination provision of that rider, it says it will terminate on the earliest of the following dates. The same thing. The anniversary on or after your 65th birthday. So it starts on the 65th birthday, but it can also terminate. It doesn't make any sense. I mean, I think that makes sense the way insurance policies work. Right. I mean, that doesn't mean that the benefits that would be provided would end. It means that the policy coverage ends on that date. Right. So if you aren't totally disabled or partially disabled by your 65th birthday, then this policy doesn't kick in. I think that's what that termination date means. But I guess my question to you earlier is I still don't feel like I have it because I understand what you're asking for now, but I don't understand how you read these policies to get to that. I guess I want you to walk me through which one do I look at that tells me this is the benefit that you get? We believe you have to read the policy in its entirety, the whole thing. You've got the base policy. What section do I tell you? For that particular premise? Yeah. If I'm going to write an opinion in your favor, what do I say? That the policy, under the general rules of the policy, the entire contract consisted of the base policy, the application, all the riders, the endorsements, and all the papers. Okay? And based upon those, he initially got a policy and he got some riders, including the lifetime rider and the COLA rider. He got the COLA rider first and then added the lifetime rider. The lifetime rider extended the benefits that he was receiving under that base policy in its entirety. Where in the lifetime rider does it say that? Because what I see in the lifetime rider is I see that it actually has its own definition. I'm sorry. Commissioner, we can't hear you. I don't know. Can you hear me? Can you hear me now? It's not great, but if council can hear you. I can hear if you see me leaning forward. I don't know what happened there, but I'll ask questions. That's better. The lifetime rider has its own definition of benefits. It has a section that defines the benefits that it's going to pay. So, it doesn't say it's extending anything. It has its own definition of benefits. So, how does your theory work, given that you have to look to the lifetime rider in its section that defines benefits to see what benefits it pays? Because under the lifetime rider, the benefits are the total disability benefits being paid. Bear with me. Total disability benefits means total disability benefits based on total disability as opposed to partial disability, right? It could, or it could be construed to mean all the benefits being paid under the policy. That was the way we construed it. Well, the policy talks about... Because it's a total disability policy. Right. The policy itself covers partial disability as well as total disability. Right, but where you have somebody who's in total disability receiving total disability benefits, we construed it to mean all of the benefits that he was receiving under his total disability package at that time. And that the lifetime rider extended all of that because that was his whole point in getting the rider. If you look at his application for it, he said, please add lifetime accident and sickness rider to existing policy. So, in his mind, his policy had the policy, and he had a couple of the riders, and then he had the COLA rider. He wanted a lifetime policy that would extend all of that. And that's what he thought he was getting. I mean, if you look at the language, again, on the top of the lifetime rider, it says that this rider provides monthly total disability benefits to be paid for everything. So, monthly total disability benefits. So, again, we construed that to mean all the disability benefits he was receiving at that time. I see I'm over my time. We'll give you your time for rebuttal. Thank you. Okay, thank you. Good morning. May it please the court. Kate Villanueva on behalf of the Apelli Mass Mutual. This case concerns a disability insurance contract with several riders, each of which provided different rights and obligations between Dr. Wickbold and Mass Mutual. The documents are not ambiguous. They do not conflict with each other. And they make clear that Dr. Wickbold is not entitled to COLA benefit increases for life. The district court correctly recognized all of these things. Judge Antoon relied heavily on the clear language in the COLA rider that identifies precisely when COLA benefit increases would no longer be payable. He also recognized that the lifetime rider was not a mere continuation of the benefits available under the base policy. Let's walk through the documents in some detail so we can find the support for Judge Antoon's conclusion. Starting with the base policy. The base policy was issued and effective in 1985. It provided the right to basic monthly benefits to the age of 65 in the event of disability. The right to basic monthly benefits under the base policy was, of course, based on the terms of the base policy itself. We now know that riders attached to the base policy created additional rights while the base policy was in force. For example, the base policy included a partial disability benefits rider, which we were discussing a moment ago. The partial rider provided the right to benefits even when the insured was not totally disabled but partially disabled. More relevant for purposes of this appeal, the COLA rider created an additional right that was not available under the base policy. The COLA rider provided the right to certain increases on base policy benefits. The COLA rider makes clear that the calculation of COLA benefit increases was based on the basic monthly benefit under the policy. There is a clear provision titled how we compute monthly benefit increases, and it is expressly based on the basic monthly benefit under the policy. The COLA benefit increases were payable to the earliest of three events, and that's really the most important language here. There is a very specific, very clear provision in the second column of the cost of living rider that says how long we'll pay benefit increases. Counsel, though, what your opponent is saying is that she agrees that the increases, in other words, there's no further increase after the anniversary of the 65th birthday. What counsel is saying, though, is at that point, we know what the total is, the amount that her client is receiving, and that continues that amount for the duration of the lifetime policy. That's essentially what she's arguing. How is that wrong? How is that specifically wrong? I think that interpretation is inconsistent with the plain language of the COLA rider, which provides for monthly benefit increases. I mean, that is the benefit, the benefit increases. She's not asking for further increase. The increases can terminate on the anniversary of my 65th birthday. I'm not asking for anything more. I'm just asking for a continuation of what I was receiving. And I think your honor described it well by saying earlier that if that clause, or it meant what she would like it to mean, or what Dr. Rickbolt wants it to say, it should say increasing will stop. I mean, the benefit increases are the very benefit available under the COLA rider. So it doesn't say increases will freeze, or we will no longer increase, we will no longer, the benefit will no longer be increasing. It says benefit, we will no longer pay benefit increases under this rider as of. And that has to mean. That's not quite what it says. What it says is we'll pay benefit increases until this date, meaning we're not going to increase anymore until after this date, right? Or is that not, let me ask you this, is that not a plausible or reasonable reading of that language? I don't think that's a plausible reading of that language because I think it's clear that this rider provides monthly benefit increases. So if those monthly benefit increases are no longer payable, the benefit itself is no longer available. And that's clear also when we look at the termination provision that makes clear that under no circumstances will the COLA rider operate beyond the age of 65. There's a, there's a First Circuit decision. It's called Proskoff, and I believe we cited it in our appellate brief. But it's a, in that language, in that case, the court confronted a COLA rider that was very different than the COLA rider we have here in that it provided a COLA benefit and then separately provided increases, right? So the COLA rider had a benefit plus increases, and the court read that to mean exactly what Dr. Wickbolt would suggest here. That is, the COLA benefit was payable, but the COLA increases stopped. But that was based on the difference in the language of the COLA rider. What do you make of her argument that the termination period was extended based on the lifetime, based on the lifetime policy or the lifetime rider? So I understand. What she's arguing is, and there's, you know, there's at least some support for some of this, not that there's not a response to it. But what the, what each rider seems to suggest is this rider is now made a part of your policy. In fact, it says that specifically. This rider is made a part of your policy. Each one says that. So if, you know, at the time that they get the policy, there's the basic policy in the COLA. And then a year later, they add on the lifetime, which says this rider is made a part of your policy. And the termination provision for there ends at the date your policy ends. Why does that not extend the whole thing, according to that? Yeah, I think by virtue of becoming a part of the policy, that doesn't mean that the benefits available under the base policy at the age of 65 was somehow locked in and just continued for life. If they're right, though, that it extends, it has to extend something. In other words, if they're right that by adding that extension of the termination into the underlying policy, it extends everything, it would have to extend something. In other words, it'd have to have some effect to it. And wouldn't that effect be that while no further increases will happen, what was earned up until the point of the 65th anniversary is going to be earned after the 65th anniversary? No, I think if we're assuming that the lifetime rider extended the base policy, the basis under which Dr. Rickbolt was entitled to benefits does not necessarily become an extension of what was available under the base policy beforehand. And I think that if we go back for a moment to the provision on the COLA rider that talks about when the benefits payable under the COLA rider will stop, the second event listed there is the date your maximum benefit period ends. In other words, even if we're assuming the policy was extended, that provision in the COLA rider makes very clear that we're still going to go with the earlier date of your 65th birthday. And so in no event would an extension of the policy, if we treat Dr. Rickbolt's interpretation as correct in that regard, would operate to extend the benefit increases available under the COLA rider. Why is the answer and why do you seem reluctant to look at the cover page? Do you think the cover page creates ambiguity? No, I don't. I'm happy to talk about the coverage page. I think the coverage page supports our position. If you look at the lifetime rider expressly references the coverage page as how to fit in the clause that says how to compute our monthly benefits under this rider. In other words, this is exactly how much you're going to get under this rider. That's exactly right. I mean, I don't think the language could be more clear. On the row that says lifetime accident slash thickness, there's $8,000. And as Your Honor pointed out earlier, it also appears below where it says your maximum monthly benefit is $8,000. This language is not confusing, nor do I think it can be reasonably interpreted to mean that the lifetime rider was something more than the $8,000 that appears on the coverage page. The Massachusetts trial court in Colt seemed to read that language at the bottom of your benefit period may be extended beyond the September 1, 2017 if you qualify for benefits under the lifetime accident to create some sort of ambiguity. Why is that reading incorrect and why shouldn't we read it that way, the same way the Massachusetts trial court read it? First, I'll say that Colt is not binding on this court. It was decided under Massachusetts law, and the policy at issue was a Massachusetts policy. I also think that the court in Colt didn't say that Dr. Wickbolt's interpretation was correct. The court only said that the language was ambiguous. Which means you lose. I understand. I think also, though, there are some meaningful distinctions between the language on the COLA rider in Colt and the language of the COLA rider in this case that could have informed the court's decision in Colt. We don't know that, unfortunately, because the Colt decision was merely two paragraphs of analysis, and it's difficult to tell exactly what informed the court. I understand that the court noted the provision that you pointed to, Your Honor, at the bottom of the page, but I think overall it's difficult to really tell what formed the basis of the court's opinion in Colt. Aside from that, though, Colt does not appear to honor the principle that we know exists at least under Florida law, which is ambiguity does not exist merely if the language is complex or if it requires analysis. And that's an important difference. There is another panel of this court that recently confronted similar circumstances, similar riders. And in that court, in that case, the court held that a similar rider, it was called an extended rider, but the equivalent of our lifetime rider, did not operate to just continue or extend the benefits available under the base policy. And in that case, the court specifically relied on similar language in the riders and in that extended rider, again, the equivalent to our lifetime rider, that described the benefit available under the lifetime rider as a new monthly benefit, just like what we have in the lifetime rider here, which is a separate benefit. It's defined in the rider itself. It's identified by a dollar amount on the coverage page. And that's very similar to what the court in Martin, this court in Martin versus Mass Mutual, did a few years ago. Can you address the issue about how the lifetime rider says it begins on age 65 and ends on age 65 in the termination provision? Sure. Yeah, I'll say that, unfortunately, that issue was not raised below. So the record, the parties didn't have the opportunity to present information about the purpose or the operation of that termination rider and the termination provision in the lifetime rider. But yes, the purpose of the lifetime rider is to provide benefits to the age beyond the age of 65. And so to the extent there, Dr. Whitfield perceives some tension between the termination provision and the purpose of the lifetime rider. I understand that. That termination provision is designed to address the situation where the, to make clear that it stops, that there is no coverage, for example, beyond the age of 65. For example, if an insured is not disabled at the age of 65, and then let's say at age 68 becomes totally disabled. This provision in the lifetime rider makes clear that he or she can't come back to Mass Mutual at that time and say, hey, wait, now I'm totally disabled. Please start paying me benefits under the lifetime rider. It makes clear that the lifetime rider terminates at the age of 65. So that's to the point then is that the incidence of becoming disabled has to happen before the age of 65. That's correct. And that is consistent with all the other language in the lifetime rider as well. Yes. Yes. Also, just to further address some of the decisional law on this issue, because Your Honor asked about Colt, not only do we have the Martin case decided by this court, but there are several other courts that have adopted the interpretation advanced by Mass Mutual in this case and have held that the language of these and similar riders is not ambiguous. There is a case decided by the New York State Supreme Court. That's Gorelitzky v. Mass Mutual, the Eastern District of Louisiana in Manali v. Paul Revere. These are cases that we cited in our appellate briefing. But I think it's important to look to those cases as well, where the courts acknowledge that the language might be complex and it might require some analysis, but that doesn't make it ambiguous. We have a very specific, very clear provision in our COLA rider, among other things, that tells us when the benefits are no longer payable. That's consistent with the termination provision in the COLA rider itself. And that is exactly the issue here. Do the COLA benefit increases get paid beyond the age of 65? And we know that they don't, based on that very specific provision. And that's the provision that governs this appeal. And I'd ask Your Honors to affirm the decision by the district court. Thank you. Thank you. Two points I'd like to make. First of all, Your Honor was discussing the maximum benefit on the coverage page. It states that it's $8,000. Mr. Wickbolt was receiving more than $8,000. He received the base amount, plus he was receiving the COLA benefits, and that was more than $8,000. And Mass Mutual was paying it. And then they stopped. So it is inconsistent with this coverage page because they, in fact, were paying more than that. Counsel, doesn't that indicate, though, that that clause has independent meaning because it refers to the largest maximum benefit that will be received and is defined as the maximum total benefit under the lifetime policy? In other words, doesn't that hurt your argument rather than help your argument that that is an independent clause specifically tied to that language in the lifetime policy or the lifetime rider? Well, I mean, I don't think so because, as you mentioned, the Colt case, if you look at the Colt case, the court there said that the lifetime rider extended all the benefits that the individual in that case was receiving, and I believe that applies here, too. It extended all the benefits he was receiving on the date that it went into effect, and that was the base amount plus the COLA amount, which I looked it up, and I believe it was $16,000. It was two times the amount of the base policy. And then the second point I'd like to bring up is that we did indeed raise the issue of the discrepancy between the provisions in our reply brief, the provisions regarding the, you know, it starts on the 65th birthday and ends on the 65th birthday. It was indeed raised in our reply brief, so that wasn't something that I just brought up today. And I know I'm over my time, so unless any of you have any additional questions, I would just respectfully request that the court reverse the district court's decision and rule in favor of Mr. Wickle. Thank you, Ms. O'Leary. We appreciate the argument. Thank you. Thank you.